UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KHALIDA ORAHA,**

        **Plaintiff,**                **CIVIL ACTION NO. 15-13431**

        **v.**                         **DISTRICT JUDGE STEPHEN J. MURPHY**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Khalida Oraha seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and Defendant's Motion for Summary Judgment (docket no. 15) be GRANTED.

## II.   PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits with a protective filing date of October 9, 2012, alleging that she had been disabled since November 2, 2011, primarily due to injuries she sustained in an automobile accident.  (TR 98-106, 176.)  The Social Security Administration denied Plaintiff's claims on March 19, 2013, and Plaintiff requested a *de novo* hearing.  (TR 73, 79-80.)  On May 30, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Timothy Christensen.  (TR 35-52.)  In an August 6, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 17-30.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.  (Docket nos. 14, 15.)  Plaintiff filed a Reply to Defendant's Motion for Summary Judgment.  (Docket no. 16.)

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 6-12, 16-21) and the ALJ (TR 18-28) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  Defendant also discusses Plaintiff's medical record.  (Docket no. 15 at 6-7.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record, with one minor exception, which is addressed below.  Therefore, the undersigned incorporates the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 16, 2016; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 2, 2011; and that Plaintiff suffered from the following severe impairments: residuals from a lumbar spine fracture, spondylolisthesis to the lumbar spine, cervical radiculopathy, residuals from a closed head injury, post-concussive syndrome, diabetes, residuals from knee arthroscopy, and an adjustment disorder with post-traumatic stress disorder features and anxiety. (TR 14.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15-17.) The ALJ then found that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit [up] to 6 hours in an 8-hour workday with a sit/stand option. She is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. She is to avoid hazards. Mentally, she is limited to simple and routine tasks with brief and superficial contact with others.

(TR 17-28.) In so finding, the ALJ also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (TR 18.)

The ALJ questioned a qualified Vocational Expert (VE) regarding whether there would be any jobs available for a person with Plaintiff's RFC. (TR 49-50.) The VE testified that there would be, and gave examples of a hand packager, a small products assembler, or a visual inspector checker, of which there are a number of jobs locally and nationally. (*Id.*) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.

3

(TR 29-30.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from November 2, 2011, through the date of the decision.  (TR 12, 30.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

4

that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff seeks a sentence four remand[1] on the grounds that the ALJ's assessments of Plaintiff's RFC and credibility are not supported by substantial evidence. (Docket no. 14 at 13.) She contends that the ALJ failed to consider all of her "documented limitations," specifically those related to standing and walking, in determining her RFC. (Docket nos. 14 at 14-21; 16 at 3-4.) As for his determination of her credibility, Plaintiff contends that the ALJ did not provide specific reasons for his credibility determination, instead using only boilerplate language. (Docket nos. 14 at 21-25; 16 at 4.) Defendants argue that that the ALJ's decision "contains extensive consideration and explanation of the evidence that both provided the basis for the RFC finding and that undermined Plaintiff's credibility," and that his decision is supported by substantial evidence. (Docket no. 15 at 10-18.)

### 1. *The ALJ's determination of Plaintiff's RFC*

Plaintiff contends that the ALJ failed to consider all of her "documented limitations," specifically those related to standing and walking, in determining her RFC, and therefore the

---

[1] Plaintiff does not specify which type of remand she seeks; however, she does not present any new evidence not previously presented to the Commissioner.

RFC determination is not supported by substantial evidence. (Docket nos. 14 at 14-21; 16 at 3-4.) She contends the evidence in the record establishes that, at most, she is capable of sedentary work, but that because of her age and past work experience, no sedentary work jobs would be available to her. (Docket no. 14 at 21.) Therefore, Plaintiff argues, the ALJ's decision should be reversed and disability benefits awarded, or alternatively, this matter should be remanded for further administrative proceedings. (*Id.* at 23.)

Plaintiff's argument on this issue consists largely of a recitation of the requirements of "light work" under the applicable rules and regulations, followed by a recitation of all the evidence which Plaintiff believes establishes that she is unable to meet those requirements.[2] (Docket nos. 14 at 14-21; 16 at 3-4.) There are two significant problems with Plaintiff's argument. First, as Defendant points out, Plaintiff's burden is higher than "marshalling evidence to suggest that [s]he is disabled," rather, Plaintiff must demonstrate that the ALJ's decision is not supported by substantial evidence. *Peterson v. Comm'r of Soc. Sec.*, 552 Fed. App'x 533, 540 (6th Cir. 2014). Plaintiff fails to do so. She does make a few conclusory arguments in support of her position,[3] but essentially, she invites the Court to reweigh the evidence and substitute its own

---

[2] Indeed, the "Argument" section in Plaintiff's brief on this issue is largely copied and pasted from her "Statement of the Case" section. (*See* docket no. 14 at 6-10, 16-21.)

[3] For example, Plaintiff asserts:

> In his RFC assessment, the ALJ found that Plaintiff retained the ability to perform a reduced range of light exertion work. This assessment falls short of including the entirety of Plaintiff's documented limitations. . . . In light of the ALJ's failure to include all of Plaintiff's limitations in his RFC assessment, the decision is not supported by substantial evidence. (Docket no. 14 at 15.)

> Plaintiff's medical documentation reveals that she would be unable to perform the physical demands of work at the light level. As the ALJ determined, Plaintiff has residuals from a lumbar spine fracture, spondylolisthesis to the lumbar spine, cervical radiculopathy, residuals from a closed head injury, post-concussive syndrome, diabetes and residuals from knee arthroscopy. (*Id.* at 16.)

> Plaintiff's testimony, as well as her objective medical findings supports a finding that [s]he is incapable of performing work at the "light" exertional level, which requires standing up to 6 hours a day and lifting up to 20 pounds occasionally. (*Id.* at 21.)

7

judgment for that of the ALJ. This is not the Court's role. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Second, it is clear from the ALJ's decision that he considered most, if not all of the evidence cited by Plaintiff in her brief. For example, Plaintiff mentions that "FMLA documents state the Plaintiff needed assistance cleaning, driving, bathing, washing clothes, cooking and shopping," from November 2011 through March 2012. (Docket no. 14 at 17.) The ALJ specifically mentions the FMLA paperwork, giving it "little weight," on the basis that it describes a "temporary restriction . . . [and it] does not reflect the claimant's specific exertional limitations." (TR 25.)

Plaintiff also describes a number of physical therapy records from November 2011 through October 2013, which reflect that Plaintiff was still suffering from pain in her lower back which radiated into her legs; that she began to experience numbness in her right hand and foot; that she had a limited range of motion and "weakness all over;" and that she began to experience neck and shoulder pain by October 2013. (Docket no. 14 at 17-19.) The ALJ addresses this evidence, stating, "[t]he undersigned has considered the physical therapy notes showing some adverse findings; however, other treatment notes and her physical consultative examination show that she has a normal gait and posture, and normal strength and tone to her extremities." (TR 27.)

Plaintiff also describes how her primary care physician, Dr. Brent Smith, found that she was "totally disabled" through December 2012. (Docket no. 14 at 20.) On June 19, 2014, he completed a Physical Residual Functional Capacity Questionnaire in which he opined that Plaintiff can only sit for up to 15 minutes and stand for up to 10 minutes at a time, and cannot "tolerate sitting, standing and walking for a total of 8 hours a day; would need frequent

8

unscheduled work breaks; is limited to 'rarely' lifting less than 10lbs.; and would likely miss at least 4 days of work each month due to her impairments." (*Id.* (citing TR 664-67).) The ALJ considered and discussed Dr. Smith's opinions, but afforded them little weight. (TR 25.) He found that such "extreme limitations," were not consistent with Dr. Smith's conservative treatment plan of mostly medication and physical therapy for the two and a half years following the car accident. (*Id.*) The ALJ also found that Dr. Smith's opinions were inconsistent with proof in the record that Plaintiff was able to shop and exercise for up to 30 minutes at a time, and that "repeated examinations to her upper extremities show that her strength is normal and thus, she would be able to lift more than 10 pounds." (*Id.*)

Notably, Plaintiff, who is represented by counsel, does not challenge the ALJ's evaluation of Dr. Smith's opinion or any other medical evidence. Nor does Plaintiff challenge the ALJ's reliance on the opinions of Dr. Florence Thomas and the state medical consultants. (TR 23, 26.) Dr. Thomas noted that Plaintiff has "5/5 motor strength in both upper extremities and both lower extremities," that she "stands without difficulty," is "able to get on and off exam table without difficulty," and "ambulates with a steady unassisted gait." (TR 616.) She concluded that Plaintiff's limitations consist of problems with "bending and stooping," that she "may need to alternate sitting and standing," and that with her "history of being managed on oral medication and insulin [for diabetes], she will need to eat meals at regular intervals." (*Id.*) The ALJ gave Dr. Thomas's opinion of Plaintiff's limitations "great weight," because it was consistent with physical therapy records, although he noted that "no eating restrictions are warranted as these can be done during her regularly scheduled breaks." (TR 23.)

The only specific challenge Plaintiff makes to the ALJ's decision is regarding his finding that she never "saw a specialist." (Docket no. 16 at 3; TR 24.) Plaintiff points out that she did

see a neuropsychologist, Dr. Bradley Sewick, in February 2012. (Docket no. 16 at 3.) The undersigned notes this error, but finds it to be insignificant. The ALJ discusses the notes from Plaintiff's visit with Dr. Sewick in his decision, so he was aware that Plaintiff saw a neuropsychologist. (TR 20-21.) Moreover, elsewhere in the ALJ's decision, he emphasizes that she was never referred to a pain management specialist, and that her "treating physician has not recommended that she undergo epidural injections," which Plaintiff does not dispute. (TR 27.) In other words, it appears the ALJ was more concerned with the fact that Plaintiff was never referred to a specialist for her pain (one of Plaintiff's chief complaints), than the fact that Plaintiff never saw *any* specialist.

Finally, the fact that the ALJ included a "sit/stand" option in his assessment of Plaintiff's RFC shows that he considered her limitations with regard to walking and standing for long periods of time. He also found that "since she has some problems with her lower extremities with limited mobility, she should never climb ladders, ropes or scaffolds." (TR 26.)

While the evidence cited by Plaintiff tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's conclusion. In addition to the opinion of Dr. Florence, Plaintiff's conservative medical treatment history, and treatment records showing that Plaintiff had normal strength and was able to walk steadily without assistance, all discussed above, the ALJ also relied on Plaintiff's ability to perform activities of daily living, which is discussed below. Therefore, this issue falls within the ALJ's zone of choice, and should not be disturbed.

### 2. *The ALJ's Assessment of Plaintiff's Credibility*

Plaintiff contends that the ALJ's assessment of her credibility is not supported by substantial evidence because the ALJ "fails to provide specific reasons . . . and instead relies upon boilerplate language." (Docket no. 14 at 23.)

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). It must, however, contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently clear to the individual and to any subsequent reviewers the weight the adjudicator gave the individual's statements and the reasons for that weight." SSR 96–7p.[4] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible," and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements about her symptoms are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than

---

[4] SSR 96-7p was superseded by SSR 16-3p. It eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, well over one year after ALJ Christensen issued his decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying the factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Plaintiff argues that the ALJ "fails to discuss any of the Plaintiff's testimony in relation to the medical evidence contained in the record," and "fails to weigh the seven factors . . . for evaluating credibility." (Docket no. 16 at 4.) Indeed, Plaintiff asserts that "the only analysis or explanation given by the ALJ for discrediting Plaintiff's credibility" is a paragraph of boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Docket no. 14 at 21 (citing TR 18).)

Plaintiff's characterization of the ALJ's decision as being limited to the boilerplate language quoted above is incorrect. The ALJ discusses Plaintiff's hearing testimony in the beginning of his Step 5 analysis. (TR 18.) He notes that she claimed her pain from the accident causes her shortness of breath, vomiting and headaches several times per week. (*Id.*) He notes her testimony that, "she is only able to sit, stand and/or walk 15 minutes at a time and can only lift up to 8 pounds," that "she often drops objects with her left hand," has "difficulty climbing stairs unable to bend or squat," and finally, that her brain injury from the accident "causes her difficulty focusing, functioning and with her memory." (*Id.*)

12

In determining her credibility, the ALJ explicitly discusses the fact that Plaintiff is nevertheless able to perform a number of activities of daily living:

> [Plaintiff] is able to perform a considerable number of activities of daily living, including caring for her personal needs independently except for requiring assistance with putting her socks and pants on. She does some light housework, sews and enjoys reading. Her son reported that the claimant does cook simple meals [in the microwave]. The claimant takes short walks and enjoys playing games on the [I]nternet. She also reports she goes to the gym regularly to exercise, goes to the store, is able to walk around Costco and drives short distances. . . . Her ability to perform these . . . tasks is evidence that she is at most mildly limited in her activities of daily living. . . . **Her ability to walk around Costco and exercise regularly at a gym is evidence that she is not as limited as she alleges and thus, would be capable of performing light exertional work with . . . limitations. . . . Although not conclusive proof that she is able to sustain full-time work, her ability to perform these activities on a regular basis must be considered, and it weighs against the credibility of her allegations.**

(TR 27 (emphasis added).)

Concerning the effectiveness of the medications Plaintiff takes for her impairments, the ALJ notes that her "diabetes and hypertension are mostly controlled by medication and it appears her headaches are exacerbated when these two impairments are not controlled." (TR 27.) He further finds that Plaintiff's "mental impairments improved after being placed on Adderall," noting that Plaintiff "admitted that Adderall has significantly improved her mood and helped her with maintaining her daytime concentration and mental functioning," and that she "began driving and even went on an extended three-week vacation." (TR 28.)

Concerning other forms of treatment that Plaintiff has received, the ALJ notes:

> [Although Plaintiff] has received treatment for the allegedly disabling impairments, the medical records show that, with the possible exception of her initial hospitalizations in November after her car accident, her treatment has been essentially routine and conservative in nature, except for ongoing physical therapy. . . . While initial imaging studies showed that she did injure herself because of the accident, she has not required any surgery, nor has she had any extended hospital stays or emergency room visits since December 2011. . . . She has not even been referred to a pain management specialist to deal with her

> ongoing pain issues. . . . **One would think if her impairments were not improving and were as debilitating as she claims, her treating physician would have ordered a more aggressive treatment protocol. Since this was never done, this le[ads] one to believe that she is not as disabled as she claims and thus, would be capable of performing light exertional work.**

(TR 27 (emphasis added).) The ALJ further notes that he "considered the exacerbatory impact of the claimant's obesity on the claimant's other impairments." (TR 27.)

As discussed above, the ALJ also gave great weight to the physical consultative examination with Dr. Florence E. Thomas, who found that, while Plaintiff "may need to alternate standing and sitting," and "may also have some difficulty with bending and stooping," she "ambulates with a steady gait," has "no gross gait abnormalities," and "stands without difficulty." (TR 616.) Dr. Thomas also noted that she did not "feel full effort was given on [Plaintiff's] part with the lumbar range of motion examination." (*Id.*)

Plaintiff does not point to any specific errors in the ALJ's weighing of the factors, apparently having overlooked that part of the ALJ's analysis. Moreover, the ALJ provided specific reasons for discounting Plaintiff's credibility in his decision, applying the factors set forth in 20 C.F.R. § 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

## VI.   CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 14) and GRANT Defendant's Motion for Summary Judgment (docket no. 15).

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  November 3, 2016         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: November 3, 2016        s/ Lisa C. Bartlett  
                                           Case Manager